UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARRIS COUNTY, TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-4363 |
| | § | |
| UNION PACIFIC RAILROAD COMPANY, | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

Pending before the Court is Plaintiff Harris County, Texas's Motion to Remand (Doc. 5), as well as Defendant Union Pacific Railroad Company's ("Union Pacific") Response (Doc. 6) and Harris County's Reply (Doc. 8). Also before the Court is Union Pacific's Motion to Refer Factual Questions to Surface Transportation Board (Doc. 7), as well as Harris County's Response (Doc. 10). Upon review and consideration of these motions, the responses and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Harris County's motion to remand should be denied.

I.  Background and Relevant Facts

This is a condemnation case brought by Harris County for a perpetual easement across a right-of-way owned by Union Pacific. (Doc. 1-1.) On April 5, 2010, Harris County filed a condemnation action in Harris County Court of Law Number 2 ("Harris County Court"), seeking an easement for a railroad crossing at Westgreen Boulevard and U.S. Highway 290 in Harris County, Texas. (Doc. 5 at 2.) The crossing is part of a project to extend Westgreen Boulevard from Interstate 10 to U.S. Highway 290 and would be the sole means of access to a proposed suburban development. (*Id.*) The site of the planned crossing is located approximately in the middle of a 13,800 foot long uninterrupted section of track, currently used as a "train staging

area where trains can be stopped without interfering with other, existing crossings."  (Doc. 6-1 ¶ 9.)

On April 21, 2010, Harris County Court appointed three special commissioners to assess Union Pacific's damages.  (Doc 1-4.)

On September 3, 2010, Union Pacific was served with the condemnation action.  (Doc. 1-14.)

On October 18, 2010, the special commissioners held a hearing, awarding Union Pacific damages of $10,444.00.  (Doc. 1-15.)

On October 22, 2010, Union Pacific was notified of the damages award.  (Doc. 1-16.)

On November 3, 2010, Union Pacific objected to the award in Harris County Court, on the basis that the special commissioners "failed to apply the correct measure of damages . . . and, consequently, the award is less than the just compensation to which [Union Pacific] is entitled." (Doc. 5, Ex. A at 3.)  Concurrently, Union Pacific filed a plea in abatement in Harris County Court, arguing that the condemnation proceedings were completely preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101 *et seq.*, asserting that, under the ICCTA, Harris County must first obtain a declaratory order from the Surface Transportation Board affirming that condemnation does not "unduly interfere with interstate commerce." (*Id.* at 2.)

On November 4, 2010, Union Pacific removed the case to this Court on the basis of federal preemption.  (Doc. 1.)  Harris County now moves for remand.  (Doc. 5.)

II.  Standard of Review

Cases filed in state court that arise under the "Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."  28

U.S.C. § 1441(b).  A defendant may remove a case only if the plaintiff could have originally initiated the suit in federal court.  *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing 28 U.S.C. § 1441(b)).  Federal district courts have original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

Whether a claim arises under federal law is generally determined by the "well-pleaded complaint" rule.  *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005).  Under this rule, "federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995) (holding that jurisdiction depends on whether "there appears on the face of the complaint some substantial, disputed question of federal law"); *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998); *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983).  It is a "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  *Merrell*, 478 U.S. at 811 (1986).

An exception to the well-pleaded complaint rule exists when the state law claims alleged are completely preempted by federal law.  *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004).  Under the complete preemption doctrine, removal is proper if federal legislation is so complete it entirely supplants the state law claims.  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987).

After removal a plaintiff may move for remand and, if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  Removal

statutes are construed "strictly against removal and for remand."  *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108– 09 (1941).  All "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000); *see also Walters v. Grow Group, Inc.*, 907 F. Supp. 1030, 1032 (S.D. Tex. 1995).  Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists.  *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).  All factual allegations are evaluated in the light most favorable to the plaintiff.  *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

III.  Discussion

A.  Timeliness

"The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b).  Harris County argues that removal was not timely, because Union Pacific removed the case on November 4, 2010, more than thirty days after being served with the petition in condemnation, on September 3, 2010.  Union Pacific responds that it removed the case fewer than thirty days after objecting to the special commissioners' damages award, November 3, 2010.  The parties dispute whether Union Pacific's receipt of the petition in condemnation or its objections to the damages award constitutes the initial pleading triggering the thirty-day removability period.  28 U.S.C. § 1446(b).

Condemnation proceedings are "special statutory proceeding[s]" governed by Chapter 21 of the Texas Property Code.  *Pearson v. State*, 315 S.W.2d 935, 936 (Tex. 1958).  Condemnation

actions are initiated by petitions in condemnation.  Tex. Prop. Code Ann. § 21.013.  Petitions in condemnation are filed in county court; however, a condemnation proceeding is "neither a suit at law nor a case in equity," and is "not within the general jurisdiction of the county court." *Pearson*, 315 S.W.2d at 936–37.  After an award is entered, either party may file an objection and "the court shall cite the adverse party and try the case in the same manner as other civil causes."  Tex. Prop. Code Ann. § 21.013.

A sister court found condemnation proceedings removable prior to an award of damages by the special commissioners or objections thereto.  *City of Sachse v. Kansas City S.*, 564 F. Supp. 2d 652, 655 (E.D. Tex. 2008) (citing *Madisonville Traction Co. v. Saint Bernard Mining Co.*, 196 U.S. 239 (1905) (holding that condemnation proceedings in Kentucky state court were removable)).  Were this Court to follow *Sachse*, removal would be time-barred.

*Madisonville*, however, addressed the removability of a "judicial proceeding . . . initiated in a [judicial] tribunal."  *Madisonville*, 196 U.S. at 246.  Administrative proceedings, by contrast, are not necessarily removable.  *City of Thibodaux v. La. Power & Light Co.*, 255 F.2d 774 (5th Cir. 1958) (holding that "some state condemnation proceedings may not be, at every stage, removable civil actions."); *Chicago Rock Island & Pacific R.R. Co. v. Stude*, 346 U.S. 574, 578 (1954) ("The proceeding . . . is administrative until the appeal [of the commissioners' award] has been taken to the district court of the county.  Then the proceeding becomes a civil action pending before those exercising judicial functions . . . and subject to removal by the defendant to the United States District Court.") (internal quotation omitted); *Village of Walthill, Neb. v. Iowa Electric Light & Power Co.*, 228 F.2d 647, 653 (8th Cir. 1956) ("The three-judge condemnation court is in reality just another board of appraisers. . . . We hold that at the time of the removal the condemnation proceeding had not acquired the status of a civil action . . . .").

The judicial nature of a proceeding can be assessed with the "functional test," whereby a court determines removability by evaluating the "actual powers, composition and procedures" of the decision-making body, without regard to its judicial nomenclature. *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994). The test originates in *Upshur County v. Rich*, 135 U.S. 467 (1890):

> The principle . . . is, that a proceeding, not in a court of justice, but carried on by executive officers in the exercise of their proper functions, as in the valuation of property for the just distribution of taxes or assessments, is *purely administrative in its character*, and cannot, in any just sense, be called a suit. . . . [T]he appeal from the assessment was made to the 'county court' eo nomine, yet that this is not a judicial body, invested with judicial functions, except in matters of probate; but is the executive or administrative board of the county, charged with the management of its financial and executive affairs.

*Upshur*, 135 U.S. at 477 (emphasis added). The question here is whether the Harris County Court proceeding, prior to Union Pacific's objection to damages award by the special commissioners, was "purely administrative in its character," or was "in any just sense" judicial. *Id.*

In Texas, condemnation proceedings held before special commissioners are not judicial. *Lower Nueces River Water Supply Dist. v. Cartwright*, 328 S.W.2d 752, 754 (Tex. 1959) ("We refer to the steps taken before the county judge and the special commissioners as the administrative proceedings because they are in no sense judicial."); *City of Tyler v. Beck*, 196 S.W.3d 784, 786 (Tex. 2006) ("Condemnation proceedings are administrative in nature '[f]rom the time the condemnor files the original statement seeking condemnation up to the time of the Special Commissioners' award. . . . Upon the filing of objections, the award is vacated and the administrative proceeding converts into a judicial proceeding.'" (quoting *Amason v. Natural Gas Pipeline Co.*, 682 S.W.2d 240, 241 (Tex. 1984))).

Therefore, Harris County's petition in condemnation does not constitute the initial pleading in the civil action now before the Court.  Rather, the thirty-day removability period under 28 U.S.C. § 1446(b) began upon the filing by Union Pacific of objections to the special commissioners' damages award on November 3, 2010.  The Court finds Union Pacific's notice for removal, filed on November 4, 2010, timely.

B.  Subject-Matter Jurisdiction

Harris County argues that the Court lacks subject-matter jurisdiction.  Union Pacific responds that Harris County's condemnation proceedings are completely preempted by the ICCTA.  The ICCTA established the Surface Transportation Board ("STB") and granted it exclusive jurisdiction over transportation by rail carriers and the construction and operation of rail tracks.  49 U.S.C. § 10501(b).

> The jurisdiction of the [Surface Transportation] Board over—
>
> > (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> >
> > (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

*Id.*; s*ee Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 442 (5th Cir. 2001) ("The regulation of railroad operations has long been a traditionally federal endeavor, to better establish uniformity in such operations and expediency in commerce and it appears manifest that Congress intended the ICCTA to further that exclusively federal effort."); *State of South Dakota v. Burlington N. &*

*Santa Fe Ry. Co.*, 280 F. Supp. 2d 919, 931 (D.S.D. 2003) (finding that the ICCTA is "a comprehensive regulatory scheme designed to deregulate the railroad industry and remove all state efforts to regulate railroads.").

The Fifth Circuit has adopted the STB's test for determining the preemptive scope of § 10501(b). *Franks Inv. Co., LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 410, 414 (5th Cir. 2010) (en banc). The test distinguishes two types of preempted actions: categorically preempted actions and actions that are preempted "as applied." *Id*. at 410. The former includes state or local regulations that prevent or govern activities directly regulated by the STB. Such regulations are preempted on the basis of "the act of regulation itself" and not "the reasonableness of the particular state or local action." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 332 (5th Cir. 2008) (quoting *CSX Transp., Inc.-Petition for Declaratory Order*, STB Finance Docket No. 34662, 2005 WL 1024490, at *2–3 (S.T.B. May 3, 2005)).

"As applied" preemption covers state or local actions according to "a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with railroad transportation." *Id*. While "routine crossing disputes . . . do not fall into the category of 'categorically preempted,'" railroad crossing disputes may be preempted "as applied," if the crossings "impede rail operations or pose undue safety risks." *Id.* at 332–33 (quoting *Maumee & W. R.R. Corp. and RMW Ventures, LLC-Petition for Declaratory Order*, STB Finance Docket No. 34354, 2004 WL 395835, at *2 (S.T.B. March 2, 2004)).

Union Pacific argues that the proposed crossing would "substantially interfere" with its current staging operations and possible future construction of a side track. (Doc. 6 at 7.) Building the crossing would reduce the uninterrupted length of track to 7,700 feet. (*Id*.) Union Pacific says it requires a section of track between 9,000 and 10,000 feet long to perform staging

operations and to construct a side track accommodating 8,100 foot long rock trains, which are "expected in this area" due to "customer demand for greater carrying capacity." (*Id.* ¶ 11.) Harris County responds that "the fact that Union Pacific might want to run a rock train on the track at some unspecified point in the future does not rise to the level of interference dictating a finding of preemption." (Doc. 8 ¶ 9.) However, the Court may consider Union Pacific's future plans in evaluating unreasonable interference with its operations, taking into account "how likely it is that the plans will come to fruition." *City of Lincoln v. Surface Transp. Bd.*, 414 F.3d 858, 860 (8th Cir. 2005) ("Condemnation is a permanent action, and it can never be stated with certainty at what time any particular part of a right of way may become necessary for railroad uses." (internal quotations omitted).)

Harris County's expert witness, Gene Davis ("Davis"), opines that the proposed crossing "will not impede or interfere with [Union Pacific's] rail operations." (Doc. 5–4 ¶ 4.) In particular, he states:

> The crossing would affect a single railroad track that is not utilized for any special purpose, such as for a passing track or for parking trains. The crossing would not interfere with the existing schedule of trains utilizing the track. Likewise, the crossing will not impact the length of the trains [Union Pacific] may run on the track or the speed at which those trains are run.

(*Id.*) Union Pacific replies that Davis "does not . . . have personal knowledge of the manner in which Union Pacific currently uses the track . . . ." (Doc. 6 at 6.)

Union Pacific contends that the proposed crossing also creates an undue safety risk. Harris County's expert, Davis, believes that the crossing "is a routine at-grade, highway-rail crossing that will not . . . pose an undue safety risk." (Doc. 5-4 ¶ 4). Davis bases his opinion on a review of an aerial photo, a legal description of the right of way, Harris County's design plans, federal accident reports, and Google Earth. (*Id.* ¶ 3). The accident reports cited by Davis

include statistics from public crossings at Becker Road, located five miles west of the proposed

crossing, and House Hahl Road, located one mile to the east.  (*Id*. ¶ 6.)  Davis testifies that

"[c]onstruction of the Westgreen crossing may likely reduce the number of vehicle crossings at

each public crossing creating an equalizing effect between the three public crossings."  (*Id*.)

However, Union Pacific's expert, Dale R. Hill ("Hill"), points out that Becker Road and House

Hahl Road are two-lane roads with "minimal traffic," and House Hahl Road ends prior to

reaching Highway 290.  (Doc. 6-1 at ¶ 14.)  Another Union Pacific expert, Patrick A. Halsted,

("Halsted") testifies:

> Mr. Davis's reliance on . . . data from Becker Road and House
> Hahl Road is not persuasive because these roads are not similar to
> the thoroughfare that Harris County is planning on Westgreen
> Boulevard.  It is not clear that Mr. Davis has considered either the
> complexity of the proposed Westgreen crossing or the
> sophisticated interconnect and signal coordination that the crossing
> will require.

(Doc. 6-2 ¶ 12.)

The proposed extension of Westgreen Boulevard will be a six-lane thoroughfare

connecting Interstate 10 and Highway 290.  (Doc. 5 ¶ 3.)  Davis's suggestion that it will lead to

reduced traffic on Becker Road, House Hahl Road, and Westgreen Boulevard defies common

sense.

Hill testifies that the gate signals at the proposed crossing and the traffic signals at the

intersection of Highway 290 will have to be synchronized, requiring "frequent communication

between Harris County and the railroad, to insure that the interconnect is accurately timed."

(Doc. 6-1 ¶ 6.)  Another potential safety concern is that "[t]here is not sufficient space between

[Highway 290] and the active railroad to stage a tractor trailer. . . . [A] tractor trailer headed

northbound will enter the eastbound access road of Highway 290 before clearing the railroad

track." (*Id.*)  Failure to clear the track or to properly synchronize traffic signals could result in a train collision involving hazardous cargo.  (*Id.*)

Harris County argues that it is entitled to a presumption of safety.  (Doc. 8 ¶ 15.)  "Harris County is a government entity that is charged with protecting the health, welfare, and safety of its citizens.  The County has no incentive to install a rail crossing that is not safe."  (*Id.*)

> The proposed crossing utilizes active crossing signal protections consisting of bells, flashers, and gates barricading all traffic lanes entering the crossing.  While Union Pacific notes that those signals and protections will have to be coordinated with the traffic signals at the feeder road intersection, it offers no evidence whatsoever that such coordination cannot be accomplished (as it presumably has been at Union Pacific's numerous other at-grade crossings along the same feeder road).

(*Id.*)  Harris County relies on Union Pacific's promotional literature, indicating that the railroad maintains 32,000 at-grade crossings across the United States, to show that at-grade crossings are "the very definition of 'routine.'"  (*Id.*; Doc. 5, Ex. B.)  However, the vast majority of Union Pacific's railroad tracks are located in rural areas, and only 10,000 of the 32,000 crossings cited by Harris County even have gates.  (Doc. 5, Ex. B.)  Union Pacific points to government policies favoring elimination of at-grade crossings wherever possible.  (Doc. 6 at 3, 5.)  Halsted testifies that "once an at-grade crossing is established it will be almost impossible to close."  (Doc. 6-2 ¶ 4.)

Disputes about railroad crossings causing less interference than the one at issue here have been held not preempted under the ICCTA.  *Franks*, 593 F.3d at 404 (no preemption where a rural landowner sought to condemn private crossings over Union Pacific tracks that had been in use for seventy years); *Barrois*, 533 F.3d at 335 n.3 (no preemption in a dispute involving 270 private crossings existing "well prior to the Railroad's acquisition of the track.")  In *Franks*, the Fifth Circuit noted that "Union Pacific presented testimony that private crossings like the ones at

issue here can affect drainage, increase track maintenance costs, and cause trains to move at slower speeds. . . . [However, t]here is no evidence in the record to permit a finding that the four crossings created any unusual interference with the railroad.") *Franks*, 593 F.3d at 414–15.

By contrast, in *Fort Bend County v. Burlington N. and Santa Fe R.R. Co.*, 237 S.W.3d 355, 358 (Tex. App.—Houston [14th Dist.] 2007), the court found a four-lane crossing bisecting both a regular track and a "passing track," used for both passing and staging trains, was preempted, because it would "impermissibly interfere with railroad operations." Like Harris County, Fort Bend County initiated the condemnation action with a declaration of public necessity. *Id.*; *cf. Barrois* 533 F.3d at 334–35 (finding no preemption where a crossing dispute arose from the "independent actions of private parties" rather than a "judicial order entered under the authority of [the condemnation statute]"). *Fort Bend County* concerned the condemnation of an existing private crossing for a one-way entrance to a private residential development. *Fort Bend County*, 237 S.W.3d. at 358. The crossing at issue here, by contrast, will connect Interstate 10 and Highway 290, in addition to providing access to a proposed suburban development. (Doc. 5 at 2.)

Applying this circuit's fact-intensive test for preemption under the ICCTA, the Court finds that the proposed crossing at Westgreen Boulevard is not a "routine" at-grade crossing, that it raises serious safety risks, and that it "unreasonably burdens or interferes" with Union Pacific's current and projected use of its railroad tracks. *Franks*, 593 F.3d at 413. Harris County's condemnation proceeding is therefore preempted under the ICCTA.

IV.  Conclusion

Accordingly, the Court hereby **ORDERS** that Plaintiff Harris County, Texas's Motion to Remand (Doc. 5) is **DENIED**.

Defendant Union Pacific's alternative Motion to Refer Factual Questions to Surface Transportation Board (Doc. 7) is **DENIED**.

SIGNED at Houston, Texas, this 9th day of August, 2011.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE